

# THE ATTORNEY GENERAL
## OF TEXAS

**PRICE DANIEL**
ATTORNEY GENERAL

AUSTIN, TEXAS

March 6, 1947

Hon. H. L. Winfield, Chairman
Oil, Gas and Conservation Committee
State Senate
Austin, Texas      Opinion No. V-62

         Re:   Senate Bill 227 providing
               for the sale of sweet or
               sour gas for the manufac-
               ture of carbon black and
               establishing a minimum
Dear Sir:             price

       We have your letter of February 28, 1947,
reading as follows:

       "At a public hearing of the Oil,
Gas and Conservation Committee February
26th, Senate Bill 227, as amended, by
Hazelwood, on motion of Senator Harris,
was sent to a sub-committee with in-
structions to obtain an opinion from the
Attorney General of Texas on the validity
of the bill as amended, with instructions
to report back one week from that date.

       "Attached hereto is Committee Amend-
ment No. 1 which represents the entire
bill as amended. As Chairman of the Oil,
Gas and Conservation Committee, and at
the request of the Committee, I am request-
ing an opinion on (1) the validity or le-
gality of the bill as a whole; and (2) the
validity or legality of the following pro-
vision contained in the amended bill; 'and
provided (2) that the price paid for such
gas at the wellhead at least equals the mar-
ket price paid at the wellhead in the area
for gas used for light and fuel purposes.'

       "You will observe the fact that this
bill would amend, if passed, a conserva-
tion statute now on the books, and that

the placing of the minimum price to be
paid for the gas as quoted above is done
in connection with the conservation fea-
tures of the existing law. You will also
observe that the language quoted does not
in itself fix the price of the gas purchas-
ed under its provisions at any definite or
fixed amount, but the price would fluctuate
with the ordinary market price in the field
as it is established from time to time by
ordinary competitive methods for gas which
is used for fuel and light purposes."

You informed us in a supplemental letter of
March 3, 1947, as follows:

"In connection with the request for
the opinion on Senate Bill 227 which was
given to you recently, may I add, as
Chairman of the Committee, that there was
certain testimony and evidence before the
Committee introduced in behalf of this bill
that there now exists a considerable num-
ber of gas wells in the area affected by
this proposed legislation which have no
pipe line connections or market outlets for
the gas. In this connection, it is also
in evidence that a lack of connection neces-
sarily results in drainage of non-producing
gas wells in the area.

"There is also evidence of the varia-
tion in prices paid for gas used in the
manufacture of carbon black, the history
of such prices for such gas having been at
times exceptionally low."

The proposed amendment reads as follows:

"SECTION 1. Section 3, Article 6008a,
Title 102, of Vernon's Civil Statutes of
the State of Texas, Annotated, Revision of
1925, being Senate Bill No. 407, Acts of the
Forty-fifth Legislature, of the year 1937,
is amended by adding a new section thereto
to be known as subdivision (e), shall here-
after read as follows:

"'(e) Gas from any well producing either

sweet or sour gas from any common reser-
voir producing both sweet and sour gas
may be used for the manufacture of car-
bon black without the prior extraction
of its gasoline content provided (1) it
is utilized in a plant producing an aver-
age recovery of not less than one and one-
half (1½) pounds of carbon black per thou-
sand cubic feet of such gas, and provided
(2) that the price paid for such gas at the
wellhead at least equals the market price
paid at the wellhead in the area for gas
used for light and fuel purposes. In arri-
ving at such market price, in the case of
sour gas, a reduction not to exceed one-
half (½) cent per thousand cubic feet shall
be allowed for purifying such gas to render
it suitable for light and fuel purposes. If
such gas be used by a producer, any royalty
paid shall be paid on the same basis.'"

It is undoubtedly within the province of the
Legislature, under its general powers in connection
with natural resources and conservation, to allow sweet
or sour gas to be sold for the use of making carbon
black. There is no constitutional provision to the
contrary.

Further, it is our opinion that the Legisla-
ture has the power to require that the price paid for
such gas shall not be less than the market price paid
in the same producing area for gas used for other pur-
poses. True, this fixes the market price to be paid
for such gas, but no certain amount is set. The pro-
vision still permits the minimum price to fluctuate
with the market price paid for other gas in the fields.
It is the recognized law of the land today that a
state legislature could go even further and fix a def-
inite minimum price to be paid on gas if the Legisla-
ture finds such action necessary for conservation and
to protect the public interest.

In Nebbia v. New York (1933), 291 U.S. 502,
89 A.L.R. 1416, the Supreme Court concluded as follows:

"Where the public interest was deemed
to require the fixing of minimum prices, that
expedient has been sustained. If the law-

making body within its sphere of government concludes that the conditions or practices in an industry make unrestricted competition an inadequate safeguard of the consumer's interests, *produce waste harmful to the public, threaten ultimately to cut off the supply of a commodity needed by the public,* or portent the destruction of the industry itself, appropriate statutes passed in an honest effort to correct the threatened consequences may not be set aside because the regulation adopted fixes prices reasonably deemed by the legislature to be fair to those engaged in the industry and to the consuming public. * * *." (Italics ours)

In Sunshine Coal Co. v. Akins (1940), 310 U.S. 381, the Court upheld a statute fixing the price of coal. In Federal Power Commission v. Natural Gas Pipe Line Co. (1942), 315 U.S. 575, the court upheld an act fixing the price of natural gas where the enactment declared that "the business of transporting and selling natural gas and ultimate distribution to the public is affected with a public interest." In a concurring opinion of Justices Black, Douglas and Murphy, it is said, "In a recent series of cases, this Court has held that legislative price fixing is not prohibited by the due process clause. We believe that, in so holding, it has returned, in part at least, to the constitutional principles which prevailed for the first 100 years of our history."

The fixing of the minimum price for gas as that price received in the area for gas used for light and fuel purposes is just and reasonable. Using natural gas for the manufacture of carbon black requires enormous quantities of the State's natural resources which cannot be replaced. The fixing of a minimum price on the gas used for such purposes will insure that competition among the various gas owners will not drive the price thereof down to the point where the gas will be wasted and improperly used.

The act does not conflict with the anti-trust statutes. It could in no wise be construed as an agreement between individuals or corporations as to a minimum price. The act does not exempt those selling or buying gas for carbon black purposes from the anti-trust statutes. If those persons combined to fix the market price

of gas at an arbitrary rate, they would be subject to prosecution. If freedom of enterprise and competition should be violated by any combination of gas buyers in an attempt to set a market price in a field, the buyers could be prosecuted the same as if this Act did not exist.

The requirement of this act is that the price to be paid must at least equal the market price paid for gas in the area for fuel and light purposes. It is a maximum of long standing that "that is certain which can be made certain". The market price for gas in a given area for fuel and light purposes can be ascertained by a court or fact-finding body. It is a matter susceptible of proof. For tax purposes the Comptroller is required to determine the market value of gas produced. Article 7047b(3). The Railroad Commission is required to fix the reasonable price of gas for certain purposes. Article 6053.

But for individuals or corporations about to enter into a contract under this Bill, it may be very difficult to know exactly what the market price in the area is. There may be different prices within the area, all of which prices are not known to those contracting. Such prices may be changed from hour to hour or day to day, without knowledge on the part of the persons contracting. The word "area" itself is capable of different constructions. How much territory is included? Does it mean the producing area, the entire field, or only a segment? If a segment, how large a segment? It is recommended that the word "area" be defined more particularly.

In order to obviate any danger of the act's being declared unconstitutional because it does not speak in definite and specific terms (see Lone Star Gas Co. vs. Kelly, 140 Tex. 14, 165 S.W. (2d) 446, which held void for indefiniteness an order of the Railroad Commission as to malodorant used in gas) it is recommended that the act included a section providing that the market price paid at the wellhead in the area for light and fuel purposes shall be determined by the Railroad Commission after notice of hearing; that the Commission shall thereafter publish such price in its main and branch offices; and that parties contracting under this Bill be permitted to accept such posted price as the minimum price fixed by this Bill.

It is further recommended that the act contain

a recitation within itself and in the emergency clause that the production and sale of sweet or sour gas for the purposes of manufacturing carbon black is affected with the public interest. Suggested amendments in that regard are herewith attached.

## SUMMARY

Committee Amendment No. 1 to Senate Bill No. 227 which provides that sweet or sour gas may be sold for the purpose of manufacturing carbon black under conditions stated in the amendment, including requirement that the price paid therefor shall not be less than the market price paid for other gas in the same producing area, is constitutional and does not conflict with the anti-trust laws of Texas.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By *Joe R. Greenhill*

Joe R. Greenhill
Assistant

JRG/acm/lh

APPROVED: March 6, 1947

*Price Daniel*
ATTORNEY GENERAL

# SUGGESTED AMENDMENTS TO SENATE BILL 227

### I.

Committee Amendment No. ___ to Senate Bill 227.

Amend Senate Bill 227 by inserting after Section ____ a new Section to be numbered Section _____ to read as follows:

"SECTION____. The production and sale of sweet or sour gas for the purpose of manufacturing carbon black is hereby declared to be a matter which is affected with a public interest."

### II.

Committee Amendment No.____ to Senate Bill 227.

Amend Senate Bill 227, Section 6 (the emergency clause) by inserting after the word "land owners" and before the word "creates" in Line 4, the following:

"and the fact that the manufacture of carbon black from sweet or sour gas is a matter and business which affects the public interest."

### III.

Committee Amendment No.____to Senate Bill 227.

Amend the caption by inserting after the word "purposes" in the third from the last line, the following:

"declaring the sale of sweet or sour gas for the purpose of manufacturing carbon black to be a matter and business affecting the public interest."